RON QUIJADA (SBN 363726)
LAW OFFICES OF RON QUIJADA
750 E. GREEN STREET, SUITE 302
PASADENA, CA 91101
TELEPHONE: (626) 437-0724
FACSIMILE: (626) 604-8329
E-MAIL: RON@QUIJADALEGAL.COM

ATTORNEY FOR PETITIONER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**MARVIN ROBERTO VALLEJOS GOMEZ**

Petitioner,

vs.

**FERETI SEMAIA, Warden, Adelanto ICE Processing Center; JAIME RIOS, Field Office Director, Los Angeles Field Office, ICE; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States,**

Respondents

Case No.: 5:26-cv-5591

**PETITION FOR WRIT OF HABEAS CORPUS**

**A# 222-570-753**

# INTRODUCTION

1. Petitioner MARVIN ROBERTO VALLEJOS GOMEZ is a native and citizen of GUATEMALA.

2. Petitioner is currently detained at the ADELANTO ICE PROCESSING CENTER in Adelanto, California by immigration authorities and is the subject of a pending removal proceedings. Petitioner does not have a removal order.

3. Petitioner came to the United States on or about July 2024.

4. This habeas petition challenges Petitioner's unlawful arrest and continued detention by Immigration and Customs Enforcement ("ICE"). Petitioner was arrested without a warrant on September 19, 2026, in Fontana, California, while traveling to work. At the time of the arrest, ICE officers lacked particularized facts establishing probable cause that Petitioner was likely to escape before a warrant could be obtained, as required by 8 U.S.C. § 1357(a)(2).

5. Significantly, Petitioner's arrest occurred after the September 2, 2026 preliminary injunction entered in *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Sept. 2, 2026), which prohibits warrantless civil immigration arrests in this District absent a pre-arrest individualized probable-cause determination that the person is likely to escape before a warrant can be obtained. The injunction further provides that unlawful immigration status alone is insufficient to establish likelihood of escape.

6. Petitioner was arrested without a pre-arrest warrant. He was given no notice of his impending arrest. Petitioner was not committing any crime at the time of his arrest. The sole basis for detaining petitioner was racial profiling.

7. Petitioner's detention is unlawful because it

(1) violates 8 U.S.C. §§ 1226(a) and 1357(a)(2);

(2) violates Petitioner's Fourth Amendent

(3) violates his right to procedural due process under the Fifth Amendment;

(4) violates his right to substantive due process under the Fifth Amendment.

8. Accordingly, Petitioner seeks a writ of habeas corpus ordering his immediate release from ICE custody because his continued detention.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 2241 (federal habeas statute); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201-2 (declaratory judgment). This his action arises under the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act (INA), United States Constitution Article I, Section 9 (Suspension Clause).

10. Venue is proper in the Central District of California under 28 U.S.C. § 2241 because Petitioner is currently detained within this District at the Adelanto ICE Processing Center. Venue properly lies within the Central District of California under 28 U.S.C.§ 1391, because this is a civil action in which Respondents are agencies of the United States, Petitioner is detained in this District, and a substantial part of the events or omissions giving rise to this action occurred in the district.

## PARTIES

11. Petitioner MARIO ROBERTO VALLEJOS GOMEZ is currently detained at the ADELANTO immigration detention center in Adelanto, California.

12. Respondent, FERETI SEMAIA, is the warden of Adelanto Detention Center, and is sued in his official capacity. The Adelanto Detention Center has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner.

13. Respondent, JAIME RIOS, is the ICE Field Office Director of the Los Angeles ICE Field Office and is sued in his official capacity. ICE Filed Office Director is responsible for the detention of Petitioner.

/ / /

14. Respondent TODD LYONS is the Acting Director of U.S. Immigration and Customs Enforcement (ICE) and is sued in HIS official capacity. ICE is responsible for the detention of Petitioners.

15. Respondent MARKWAYNE MULLIN is the Secretary of the Department of Homeland Security ("DHS"), and is sued in his official capacity. The Secretary of Homeland Security is charged with the administration and enforcement of immigration laws. 8 U.S.C. § 1103(a).

16. Respondent TODD BLANCHE is the Attorney General of the United States and is sued in his official capacity as the head of the Department of Justice. The Attorney General is responsible for the fair administration of the laws of the United States.

## STATEMENT OF FACTS

17. Petitioner is a native and citizen of GUATEMALA currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center. ***See* https://locator.ice.gov/odls/**

18. Prior to his detention, Petitioner resided continuously in San Bernardino, California.

19. Petitioner is 36 years old. Petitioner entered the United States without inspection on or about July 28, 2024, and has resided continuously in the United States since then.

### Immigration History

20. Before the government-initiated removal proceedings against Petitioner, Petitioner did not have any case pending with immigration services.

### ICE Detention

21. On September 19, 2026, at approximately 6:00 a.m., Petitioner was traveling to work in Fontana, California, when ICE agents stopped the vehicle in which he was riding and took him into custody.

22. Petitioner was traveling to work as a gardener in a Toyota Tacoma with several coworkers. Petitioner is Hispanic, was dressed for gardening work, and was traveling with other gardening workers when ICE agents intercepted their vehicle.

23. ICE agents intercepted the vehicle on a public street and blocked its path with their vehicles, preventing Petitioner and his coworkers from continuing on their way.

24. The agents identified themselves as immigration officers, directed Petitioner out of the vehicle, seized him, and took possession of his wallet and cellular telephone. All of these without any indication that Petitioner was unlawful in the United States or that he was committing a crime.

25. At time of the encounter, Petitioner was not committing a crime, attempting to flee, resisting the officers, or engaging in conduct indicating that he intended to evade immigration authorities. He was simply traveling to work when ICE agents intercepted the vehicle.

26. Petitioner did not attempt to run or leave the scene after the immigration officers approached him. Nevertheless, the officers took him into custody without providing him any meaningful explanation at the scene for the basis of his arrest. He was not provided any notice of his arrest.

27. Before arresting Petitioner, the officers did not ask him questions concerning whether he intended to flee, where he resided, how long he had lived at his residence, his employment, his family or community ties, or whether he would remain available while the officers obtained an administrative warrant.

28. Based on the circumstances surrounding the stop, Petitioner believes that ICE agents targeted and stopped him because of his Hispanic appearance and his perceived occupation as a landscaping worker.

/ / /

/ / /

29. Petitioner is unaware of any other conduct or circumstance preceding the stop that would have caused ICE agents to identify him individually for immigration enforcement.

**Petitioner's Criminal History**

30. Petitioner does not have a criminal record or history in the United States. He has never been arrested.

## LEGAL BACKGROUND

31. The following legal principles govern Petitioner's claims for habeas corpus relief. Although Congress has authorized the Executive Branch to arrest and detain certain noncitizens under the Immigration and Nationality Act ("INA"), that authority remains subject to the Constitution, federal statutes, and longstanding principles governing executive detention. As discussed below, the Great Writ of habeas corpus provides the traditional means by which federal courts review the legality of immigration detention and remedy constitutional violations.

### A. Detention of Non-Citizens Under the INA

32. The Immigration and Nationality Act (INA) prescribes distinct forms of detention for noncitizens in removal proceedings, distinguished primarily by the status of the noncitizen at the time of apprehension.

33. First, 8 U.S.C. § 1226 authorizes detention of noncitizens in standard removal proceedings before an immigration judge. Individuals detained under § 1226(a) are entitled to a bond hearing to determine eligibility for release. 8 C.F.R. §§ 1003.19(a), 1236.1(d). Noncitizens who have been admitted, or who are physically present in the interior of the United States, are subject to detention under § 1226(a).

34. Second, noncitizens arrested, charged with, or convicted of specified criminal offenses are subject to mandatory detention under 8 U.S.C. § 1226(c).

35. Third, the INA mandates detention for noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1), and for other recent arrivals

seeking admission under § 1225(b)(2). These provisions are designed for the border context and for individuals seeking admission.

36. Finally, the Act provides for detention of noncitizens previously ordered removed, including those in withholding-only proceedings. 8 U.S.C. § 1231(a)–(b).

**B. Habeas Corpus is the Traditional Means of Challenging Unlawful Executive Detention**

37. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004).

38. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to a petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).

39. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A noncitizen in immigration custody may bring a § 2241 petition on the ground that his detention violates the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

40. The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence. *Walker v. Johnston,* 312 U.S.

275, 286 (1941) ("On a hearing, [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence."); *Parke v. Raley,* 506 U.S. 20, 31 (1992); *Sumner v. Mata,* 449 U.S. 539, 551 (1981).

**C. Civil Immigration Detention is Subject to Constitutional Limitations**

41. Congress has authorized immigration detention under several provisions, including 8 U.S.C. §§ 1226 and 1231. That authority is not unlimited. Immigration detention is civil, not criminal, and remains subject to the Constitution's constraints.

42. The Supreme Court has repeatedly recognized that civil immigration detention serves limited regulatory purposes, principally ensuring a noncitizen's appearance at removal proceedings and protecting the community from danger. Because immigration detention is regulatory rather than punitive, continued detention must bear a reasonable relationship to those legitimate governmental interests. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527-28 (2003); *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

**D. The Fifth Amendment Requires Constitutionally Adequate Procedures before the Government May Deprive an individual of Physical Liberty**

43. The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id*. at 690; see also *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or

over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

44. A procedural due process claim involves two inquiries: first, whether the challenged government action implicates a protected liberty interest; second, if so, what process is constitutionally due before that interest may be taken. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); accord *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property" (emphasis in original)).

45. Where a protected liberty interest is at stake, courts apply the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

46. In *Mathews*, the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335; see *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context");

47. Because the government's discretion to detain individuals under 8 U.S.C. § 1226(a), and to revoke custody decisions under § 1226(b), is not "unlimited," that discretion must comport with the Mathews framework and constitutional due process more broadly. *Zadvydas*, 533 U.S. at 698.

**E. An Arrest Warrant is Required**

48. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings.

49. The Statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

50. Under 8 C.F.R. §236.1(b)(1), a noncitizen may only be arrested and detained pursuant to the Form I-200 Administrative Warrant if it is issued by an authorized official: At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest.

51. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter. 8 C.F.R. § 236.1(b)(1).

**F. A warrantless arrest is valid if the government satisfies the limited exceptions under 8 U.S.C. § 1357(a)(2)**

52. Immigration officers are authorized to make warrantless arrests in limited circumstances. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation ... regulating the admission, exclusion, expulsion, or removal of aliens," or when an officer has reason to believe (i) the noncitizen is in the United States in violation of such laws or regulations and (ii) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4) – (5) (providing other circumstances that justify warrantless arrest).

/ / /

/ / /

/ / /

**COUNT ONE**

***Arrest and Detention in Excess of Statutory Authority***

***(Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2))***

53. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

54. On September 2, 2026, the United States District Court for the Central District of California preliminarily enjoined federal immigration officers from conducting warrantless civil immigration arrests within this District without a prearrest individualized determination of probable cause that the person to be arrested is likely to escape before a warrant can be obtained. *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, Dkt. 738 (C.D. Cal. Sept. 2, 2026)

55. The Court further held that mere presence in the United States in violation of immigration law is not, standing alone, sufficient to establish that an individual is likely to escape before a warrant can be obtained.

56. Petitioner was arrested in Fontana, California, on September 19, 2026 after entry of the *Vasquez Perdomo* preliminary injunction. At the time of the encounter, Petitioner was merely traveling to work. He was not committing a crime, attempting to flee, resisting ICE officers, or engaging in conduct suggesting that he intended to evade immigration authorities.

57. Before arresting Petitioner, ICE officers did not ask him where he lived, how long he had lived there, where he worked, whether he intended to leave the area, whether he would remain available while ICE obtained a warrant, or any other questions directed toward determining whether he was likely to escape before a warrant could be obtained.

58. Petitioner did not attempt to run or otherwise leave the scene. Rather, ICE agents blocked the vehicle in which Petitioner was riding, directed him out of the vehicle, seized him, and took possession of his wallet and cellular telephone.

59. On the facts presently known to Petitioner, ICE officers lacked particularized facts, known before his arrest, establishing probable cause that Petitioner was likely to escape before an administrative warrant could be obtained.

60. The *Vasquez Perdomo* Court emphasized that the relevant probable-cause inquiry must be individualized and based upon facts known to the arresting officer at the time of arrest.

61. Accordingly, Petitioner's warrantless arrest exceeded the authority granted by 8 U.S.C. § 1357(a)(2) and violated the statutory warrant requirement governing detention under § 1226(a).

62. Respondents have identified no exigent circumstance, attempted flight, prior failure to appear, concealment, or other individualized circumstance demonstrating that Petitioner was likely to escape before an administrative warrant could be obtained.

63. To the extent ICE relied upon Petitioner's ethnicity, occupation, clothing, or work vehicle rather than individualized facts establishing the requirements of § 1357(a)(2), those circumstances cannot satisfy the statutory requirement that officers possess reason to believe Petitioner was likely to escape before a warrant could be obtained.

64. Respondents did not obtain or execute an administrative arrest warrant before seizing Petitioner. Because the Government cannot establish the statutory prerequisites for a warrantless arrest under § 1357(a)(2), Petitioner's arrest exceeded the authority granted by Congress.

65. Petitioner's resulting detention is therefore unlawful.

## COUNT TWO

### *Violation of the Fourth Amendment*

### *Unreasonable Seizure*

66. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

67. The Fourth Amendment prohibits unreasonable seizures, including arrests unsupported by probable cause or reasonable, individualized suspicion.

68. ICE agents seized Petitioner when they intercepted and blocked the Toyota Tacoma in which he was traveling, prevented the occupants from proceeding, directed Petitioner out of the vehicle, took possession of his wallet and cellular telephone, and placed him into custody.

69. Before that seizure, Petitioner had not committed any crime, attempted to flee, resisted law enforcement, or engaged in conduct suggesting that he was subject to arrest.

70. Petitioner had not previously identified himself to the officers or provided them information concerning his immigration status before they intercepted the vehicle.

71. Petitioner is Hispanic, was dressed for gardening work, and was traveling with other gardening workers when ICE agents intercepted the vehicle. Based on the circumstances surrounding the stop, Petitioner believes the vehicle and its occupants were selected for immigration enforcement because of their perceived ethnicity and occupation.

72. Petitioner is unaware of any individualized facts known to ICE before the stop establishing probable cause to arrest him or reasonable suspicion particularized to him sufficient to justify his seizure.

73. Probable cause must be particularized to the individual who is seized and cannot be supplied merely because officers possess grounds relating to another person or location. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

74. Petitioner's initial seizure and arrest therefore violated the Fourth Amendment, and his continuing physical custody is the direct product of that unlawful seizure.

/ / /

/ / /

**<u>COUNT THREE</u>**

***Violation of the Fifth Amendment***

***Procedural Due Process***

75. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

76. The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law, which requires, at minimum, notice and an opportunity to be heard before a neutral decisionmaker prior to a significant deprivation of liberty. Because Respondents sought to deprive Petitioner of his physical liberty, due process required constitutionally adequate procedures before that deprivation where pre-deprivation process was practicable. See *Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976); *Zinermon v. Burch*, 494 U.S. 113, 127–28 (1990).

77. Under *Mathews*, the Court considers: (1) the private interest affected by the Government's action; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional safeguards; and (3) the Government's interest, including the burdens associated with additional process. *Mathews*, 424 U.S. at 335.

**A. Petitioner possesses an exceptionally strong liberty interest.**

78. Petitioner's private interest is his freedom from physical incarceration. That interest is substantial because immigration detention separates Petitioner from his home, employment, family, community, and ability to prepare his immigration case while at liberty.

79. Before September 19, 2026, Petitioner lived at liberty in San Bernardino, California, worked as a gardener, had no criminal record, and had never previously been arrested in the United States.

80. ICE's decision to place Petitioner in physical custody therefore effected an immediate and substantial deprivation of liberty.

**B. The absence of any pre-deprivation process created a substantial risk of erroneous detention.**

81. Respondents afforded Petitioner no notice or opportunity to contest the necessity of detention before taking him into custody.

82. Petitioner was not arrested after appearing at a previously scheduled immigration proceeding or after violating a condition of release. ICE encountered Petitioner while he was traveling to work.

83. Before taking Petitioner into custody, ICE officers did not provide him with an opportunity to demonstrate that detention was unnecessary because he was neither a danger to the community nor a flight risk.

84. Nor did the officers inquire into readily ascertainable facts bearing on whether physical detention was necessary, including Petitioner's residence, employment, criminal history, willingness to comply with immigration proceedings, or availability to immigration authorities.

85. The risk of erroneous deprivation was particularly substantial because Petitioner had no criminal history, did not flee, did not resist the officers, and was simply traveling to work when ICE intercepted the vehicle.

86. A pre-deprivation hearing before a neutral decisionmaker would have materially reduced that risk by requiring the Government to establish why physical detention, rather than continued liberty pending removal proceedings, was necessary.

87. Recent Central District authority is particularly helpful here. On September 14, 2026, *Liping Lin v. Janecha*, No. 5:26-cv-04918-DFM (C.D. Cal. Sept. 14, 2026), held that an initial Respondents' detention of Petitioner without a pre-deprivation hearing violated her procedural due process rights. The court applied *Mathews*, emphasized the petitioner's liberty interest in freedom from confinement, and held that absent urgency, advance process was required.

**C. Respondents had little or no legitimate interest in dispensing with advance process.**

88. The Government has a legitimate interest in enforcing the immigration laws and detaining persons where detention is necessary to address danger or flight risk.

89. But that interest does not establish a legitimate need to imprison Petitioner without any prior process. Nothing in Petitioner's conduct created an emergency requiring immediate detention.

90. Petitioner was not fleeing, committing a crime, threatening officers, concealing his identity, or attempting to evade immigration authorities. He was simply going to work.

91. Respondents had available less restrictive means of enforcing the immigration laws, including obtaining an administrative warrant, initiating removal proceedings, issuing appropriate reporting instructions, or seeking detention after constitutionally adequate process.

92. Accordingly, Respondents' arrest and detention of Petitioner without constitutionally adequate pre-deprivation notice and an opportunity to be heard violated Petitioner's right to procedural due process under the Fifth Amendment.

93. This absence of process violated Petitioner's right to procedural due process under the Fifth Amendment.

## COUNT FOUR

***Violation of Fifth Amendment Right to Due Process***

***Substantive Due Process***

***(Arbitrary and Retaliatory Detention)***

94. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein

95. The Fifth Amendment's guarantee of due process also protects against arbitrary government action untethered to any legitimate governmental interest. 53.

The Due Process Clause of the Fifth Amendment prohibits arbitrary governmental action that deprives an individual of liberty. Due process requires that government action be rational and non-arbitrary. *U.S. v. Trimble*, 487 F.3d 752, 757 (9th Cir. 2007). Where executive action is untethered from any legitimate governmental purpose and is instead designed to punish or coerce, it cannot survive substantive due process scrutiny. *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998).

96. Civil immigration detention is only permissible where it bears a "reasonable relation to the purpose for which the individual was committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *Zadvydas*, 533 U.S. at 690. Those purposes are limited: preventing flight and protecting the community. *Demore,* 538 U.S. at 528 (2003).

97. Petitioner has no criminal history in the United States and, before his September 19, 2026 immigration arrest, had never been arrested.

98. At the time ICE seized Petitioner, he was traveling to work, did not attempt to flee, did not resist the officers, and was not engaged in criminal conduct.

99. Despite the absence of individualized facts demonstrating that Petitioner was likely to escape before a warrant could be obtained, Respondents deprived him of his physical liberty through a warrantless arrest and continue to detain him as a consequence of that arrest.

100. The Due Process Clause prohibits governmental detention that is not authorized by law or sufficiently related to a permissible civil purpose. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

101. Respondents' continued physical detention of Petitioner, following an arrest undertaken without satisfaction of the statutory prerequisites for warrantless arrest, constitutes an unlawful deprivation of Petitioner's liberty in violation of the Fifth Amendment.

102. Petitioner is therefore entitled to appropriate habeas relief, including release from unlawful custody.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this court:

a. Assume jurisdiction over this matter;
b. Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from Custody
c. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and
d. Order further relief as this Court deems just and appropriate

Respectfully Submitted,

Dated: 09/22/2026

*/s/ Ron Quijada*

Ron Quijada (SBN: 363736)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com

**VERIFICATION PURSUANT TO 28 U.S.C. 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Respectfully Submitted,

Dated: 09/22/2026

*/s/ Ron Quijada*

Ron Quijada (SBN: 363736)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com